UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MARK STERLING MONTOYA,

Plaintiff,

v.

ANDREW M. SAUL, Commissioner of Social Security,

Defendant.

No. 2:18-cv-01081 JAM CKD

FINDINGS AND RECOMMENDATIONS

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). For the reasons discussed below, the undersigned will recommend that plaintiff's motion for summary judgment be denied and the Commissioner's cross-motion for summary judgment be granted.

BACKGROUND

Plaintiff, born in 1968, applied on July 22, 2014 for Title II disability insurance benefits, alleging disability beginning June 13, 2013. Administrative Transcript ("AT") 13, 25. Plaintiff alleged he was unable to work due to anxiety, bipolar disorder, L5-S1 spinal fusion, herniated discs, and incontinence. AT 227. In a decision dated March 14, 2017, the ALJ determined that

plaintiff was not disabled.[1]  AT 13-27.  The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2019.
>
> 2. The claimant engaged in substantial gainful activity during the following periods: June 13, 2013 to March 3, 2014.
>
> 3. However, there have been continuous 12-month periods during which the claimant did not engage in substantial gainful activity. The remaining findings address the periods the claimant did not engage in substantial gainful activity.
>
> 4. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine, degenerative disc disease of the thoracic spine, methamphetamine-induced cardiomyopathy,

---

[1]  Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs.  See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

   The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

congestive heart failure, chronic pain syndrome, migraine headaches, history of knee surgery, bilateral carpal tunnel syndrome (CTS) status post carpal tunnel release surgeries, asthma, bipolar disorder, depressive disorder, anxiety disorder, personality disorder with borderline traits and methamphetamine addiction disorder.

5. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

6. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work, except he is able to lift and carry ten pounds frequently and 20 pounds occasionally. He is able to sit for about six hours of an eight-hour workday. He is able to stand and/or walk for about six hours of an eight-hour workday. He is precluded from climbing ladders, ropes, and scaffolds. He is limited to frequent handling, fingering, and gross and fine manipulation. He should avoid concentrated exposure to fumes, odors, dusts, smoke, gases, and poor ventilation. He is able to perform simple, repetitive tasks. He is limited to no more than occasional interaction with supervisors, coworkers, and the public.

7. The claimant is unable to perform any past relevant work.

8. The claimant was born on XX/XX 1968, and was 45 years old, which is defined as a younger individual ages 18-49, on the alleged disability onset date.

9. The claimant has at least a high school education and is able to communicate in English.

10. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled' whether or not the claimant has transferable job skills.

11. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

12. The claimant has not been under a disability, as defined in the Social Security Act, from June 13, 2013, through the date of this decision.

AT 15-26.

////

////

////

## ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) the ALJ improperly rejected the opinions of plaintiff's treating doctors; (2) the ALJ improperly rejected plaintiff's testimony; (3) the ALJ improperly rejected lay witness testimony; and (4) the ALJ's Step Five finding is not supported by substantial evidence.

## LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

////

////

ANALYSIS

A. Medical Evidence

Plaintiff asserts that the ALJ improperly discounted the opinions of treating psychiatrist Dr. Meredith Tecco and treating psychologist Dr. Robert Christensen, who signed a joint letter about plaintiff's condition on May 26, 2015. AT 4282-4283. The letter noted that plaintiff had been a patient at the Kaiser Pleasanton Psychiatric Clinic for two years; Dr. Tecco was his psychiatrist for medication management, and Dr. Christensen was his psychologist for case management and therapy. AT 4282. At the hearing, the ALJ adduced that plaintiff had not seen either physician in person since September 2013, though he had spoken with Dr. Christensen on the phone since then. AT 54-55.

Dr. Christensen wrote that plaintiff "continues to be very depressed and anxious" and "has chronic pain in his back, shoulder, and neck." AT 4282. The letter concluded:

> In this writer's opinion, Mark is honestly reporting his symptoms and not malingering. He is assessed to have type A personality features and along those lines a good work ethic, and would work if he could. However, Mark's complex of psychiatric and chronic pain symptoms from his medical conditions result in him being disabled from work long term . . . His prognosis is guarded. He has marked impairments in being able to concentrate and sustain concentration, being able to carry out and remember work like procedures and instructions, and being able to attend work. He is not able to make it through one day of work and would miss numerous (much more than 3) days of work per month. Thus he is not capable of maintaining a job. In his condition he is not able to tolerate even low stress and is easily overwhelmed by tasks or social demands resulting in lability and withdrawal.

AT 4283. The letter concluded with a request to expedite plaintiff's claim for federal disability benefits. AT 4283.

The ALJ addressed this joint medical opinion as follows:

> The opinion of Drs. Christensen and Tecco is inconsistent with the claimant's positive response to conservative mental health care and mental status examinations documenting normal concentration, normal attention, intact memory, average intelligence, normal fund of knowledge, appropriate behavior, calm demeanor, improved mood, improved sleep and improved anxiety-related symptoms.[2]

---

[2] See AT 17 (decision states that plaintiff's mental symptoms responded well to medication and

5

> Moreover, their opinion is overly restrictive in light of the claimant's good activities of daily living[3] and history of noncompliance with resulting worsening symptoms.[4] Accordingly, the undersigned gives little weight to the opinions of Drs. Christensen and Tecco.

AT 24.

In contrast, the ALJ gave significant weight to the opinion of Dr. Silvia Torrez, who conducted a comprehensive psychiatric evaluation of plaintiff in 2014. AT 24. Dr. Torrez opined that he would be mildly to moderately limited in his ability to withstand the stress of a routine workday; interact appropriately with coworkers, supervisors, and the public; and adapt to changes, hazards, or stresses in the workplace setting. AT 3303-3310. The ALJ also gave partial weight to the opinion of reviewing psychologist Dr. Robert Liss, who opined that plaintiff's mental impairments restricted him to simple tasks and limited public contact. AT 24. These limitations are reflected in the RFC. AT 18.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a

---

counseling); AT 22 (decision notes numerous mental status examinations where plaintiff had normal mood, affect, behavior, orientation, attention span, fund of knowledge, grooming, and behavior).

[3] See AT 23 (noting that plaintiff "engaged in construction work earning SGA levels during the relevant period. He also reported working out with a personal trainer, which included lifting weights three-to-four-days per week. He was able to perform household chores, such as scrubbing floors and moving furniture. He also reported helping people move house."). See AT 331, 358, 491, 808, 812, 887 (noting that plaintiff "appears to be very fit"), 1083, 1795, 1840, 1976, 1901, 1917, 4276-4277.

[4] See AT 21-22 (ALJ's discussion of how "the claimant's mental symptoms improved with treatment and worsened during periods of noncompliance"). See AT 1890, 1896, 1908-1911, 1922 (noting poor medication compliance during periods in 2013 and 2014).

6

treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, that are supported by substantial evidence. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

Here, the ALJ provided specific and legitimate reasons for discounting the treating physicians' May 2015 opinion, supported by substantial record evidence referenced in the body of the decision as noted above. The undersigned finds no error on this basis.

B. Credibility

Plaintiff next asserts that the ALJ improperly discounted his subjective symptoms.

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. See id. at 345-47. The ALJ also may consider: (1) the

applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13. Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment. See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

After reviewing the medical evidence, the ALJ found plaintiff less than fully credible and summarized her reasons as follows:

> The medical evidence does not support his allegations of disabling physical symptoms. As discussed above, his spinal and knee impairments were responsive to conservative care. Moreover, image studies of his knees showed only mild findings and image studies of his thoracic and lumbar spine showed no evidence of significant spinal cord compression. Additionally, his CTS-related symptoms essentially resolved with surgery and did not result in disabling symptoms lasting at least 12 continuous months. Finally, the claimant's cardiac impairments improved with medication and sobriety. Moreover, the claimant's remaining symptoms have been accounted for in his residual functional capacity.

> The medical evidence does not support the claimant's allegations of disabling mental symptoms. As discussed above, the claimant's mental symptoms improved with treatment and worsened during periods of noncompliance. He repeatedly indicated a positive response to treatment stating he was doing well and engaging in good activities of daily living. Moreover, the claimant's remaining symptoms have been accounted for in his residual functional capacity assessment.

8

AT 23.

The ALJ first considered the objective medical evidence, summarized in the decision as to plaintiff's history of spinal surgery and back pain, cardiac impairments, migraine headaches, history of knee surgeries, carpal tunnel syndrome, asthma, and mental impairments. AT 19-22. In her review of these conditions, the ALJ considered aggravating factors, medication, treatment and functional restrictions. See, e.g., AT 19 (noting that plaintiff's spinal impairments were deemed nonsurgical and he was "treated conservatively throughout the relevant period"); AT 20 (noting that plaintiff's cardiac and chronic pain symptoms improved with medication management); AT 22 (noting that claimant's numerous mental status examinations were normal and his mental symptoms improved when he was compliant with treatment).

The ALJ noted plaintiff's periods of noncompliance with prescribed treatment, such as frequent methamphetamine use that led to cardiac symptoms. AT 20. See Koepke v. Comm'r, 490 Fed. Appx. 864, 966 (9th Cir 2012) (unpublished) (upholding negative credibility determination where "the ALJ cited noncompliance with and abuse of narcotic prescriptions"). She incorporated functional restrictions into the RFC based on objective medical evidence of physical and mental impairments. AT 20-22. The ALJ also noted plaintiff's daily activities of personal training workouts, household chores, and moving furniture, as compared to his claims of debilitating physical impairment. AT 23. The undersigned concludes that the ALJ provided legally sufficient reasons to find plaintiff's subjective complaints less than fully credible.

### C. Lay Witness

Plaintiff asserts that the ALJ improperly discounted the third-party statement of his girlfriend, Lori Mahler, who completed a questionnaire in October 2014 as to his limitations. AT 249-257. Mahler noted plaintiff's distractibility, pain, lack of focus, and medication side effects. She stated that he required help getting dressed, lifting items into the grocery cart, and other daily activities, and that his disabilities affected multiple areas of functioning.

"[L]ay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence, and therefore cannot be disregarded without comment." Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996); see also Dodrill v. Shalala, 12 F.3d 915,

918-19 (9th Cir. 1993) (friends and family members in a position to observe a plaintiff's symptoms and daily activities are competent to testify to condition). "If the ALJ wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to each witness." Dodrill, 12 F.3d at 919.

As to Ms. Mahler's testimony, the ALJ wrote: "The undersigned has reviewed and given consideration to Ms. Mahler's statements; however, for the same reasons discussed regarding the claimant's allegations, the undersigned finds her statements to be unpersuasive." AT 23. The ALJ found her statements inconsistent with the objective medical evidence and plaintiff's daily activities, as discussed above. See Valentine v. Comm'r, 574 F.3d 685, 694 (9th Cir. 2009) (where ALJ provided sufficient reasons for rejecting claimant's own testimony, "it follows that the ALJ also gave germane reasons for rejecting" similar testimony of lay witness). The undersigned finds no error on this basis.

### D. Step Five

Lastly, plaintiff claims that the ALJ's questions to the vocational expert did not include all plaintiff's limitations as argued in the earlier claims. However, plaintiff has not shown that the RFC was in error. For the reasons discussed above, the court finds that plaintiff's assessed RFC was adequately explained and grounded in substantial evidence, such that the questions posed to the vocational expert were appropriate.

CONCLUSION

For the reasons stated herein, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for summary judgment (ECF No. 18) be denied;

2. The Commissioner's amended cross-motion for summary judgment (ECF No. 24) be granted; and

3. Judgment be entered for the Commissioner.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned

"Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: August 5, 2019

_/s/ Carolyn K. Delaney_
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/montoya1081.ssi.ckd_fr